Rosen, J., dissenting:
I disagree with the majority's decision to remand to the district court for the limited purpose of revisiting the district judge's threshold reason-to-believe intellectual disability determination based on current law. I conclude that the questions are neither so unique nor the facts so limited that we cannot determine with sufficient certitude the outcome of that remand.
The question put before the district judge by the majority now is whether the evidence before him in March 2009 provided sufficient reason to believe that Thurber was a person with an intellectual disability, i.e., a person having significantly subaverage general intellectual functioning. The judge's determination is to be informed by current clinical standards reflected in current caselaw: an IQ score range taking into account the standard error of measurement; deficits in adaptive functioning, i.e., the inability to learn basic skills and adjust behavior to changing circumstances; and onset of these deficits during the developmental period. He must leave out any consideration of whether Thurber's intellectual functioning impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. K.S.A. 2016 Supp. 21-6622(a) and (h) ; K.S.A. 2016 Supp. 76-12b01(i) ; op. at 451-52.
Against this, compare the standard the district judge applied:
"Mental retardation is defined at K.S.A. [76-12b01] subsection [d] ... the first clause of that definition says mental retardation means significantly subaverage general intelligent function. It doesn't say below average. It says significantly subaverage. Statute K.S.A. 21-4623 ( [a] ) is somewhat vague on the quantum of proof necessary for the Court to make an initial determination .... It simply says the Court should determine whether there is sufficient reason to believe he's mentally retarded.
"While that is a vague concept, it would stand to reason that something more is needed than the [bald] assertion that defendant is mentally retarded. The Court finds that there is not sufficient reason to believe the defendant is mentally retarded."
At the presentence hearing on Thurber's motion to determine mental retardation (now intellectual disability), Thurber's counsel merely referenced evidence presented in the penalty phase of "low mental functioning" and an IQ "somewhere in the 70's." In response, the State pointed out that Thurber's own expert, Dr. Barnett, had emphasized that he was not saying Thurber was "mentally retarded." The State also referenced numerous facts in the record that substantiated *455 that Thurber did not have significant deficits in adaptive functioning.
The district judge made clear he considered "anything that was admitted into evidence," from the hearing on pretrial motions through the sentencing phase hearing. From that evidence, he found Thurber:
• Graduated from high school with a 2.5 GPA
• Completed 64 credit hours at Cowley Community College with a 2.1 GPA
• Successfully completed testing for a driver's license
• Held jobs at Kentucky Fried Chicken and Subway
• Did part-time work as a bail bondsman
• Communicated in an understandable and intelligent manner with law enforcement officers, including showing an ability to offer a version of events consistent with eyewitness testimony
• Socialized with people of his own age (stage of development), none of whom testified they saw mental deficits in him, and
• Was evaluated by four different professionals, three of whom made no finding of mental retardation and the fourth of whom, Dr. Wallace, reported that Thurber "appears to be a smart individual, capable of completing college as well as obtaining employment that would sustain his financial needs." Wallace concluded that Thurber "definitely did not show any psychiatric retardation."
The district judge focused on the valid part of the statutory definition. There's no indication he focused on capacity to appreciate criminality or conform conduct. On the other hand, his findings reflected Thurber's ability to learn basic skills and adjust behavior to changing circumstances. He made no findings based on IQ scores.
It strains logic to label these facts too "limited" and the questions they address so "unique" as to conclude we can't decide on this record that the district court did not abuse its discretion in making the "no reason-to-believe" decision. But when the majority adds, on top of this, that the remand is not to be seen as an opportunity to develop post-March 2009 facts to support a different threshold finding, it becomes clear the district judge has little choice but to make the same finding again. I would uphold the district judge's determination and proceed to the important penalty phase issues that, by this decision, will be unnecessarily delayed.